[No. D009847. Fourth Dist., Div. One. Oct. 5, 1989.]

THE PEOPLE, Plaintiff and Respondent, v.
RONALD ROBERT KOURY et al., Defendants and Appellants.

**COUNSEL**

Anderson & Anderson, Fred W. Anderson, Anthony L. Curiale and Deborah A. Fraser for Defendants and Appellants.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, and Holly D. Wilkens, Deputy Attorney General, for Plaintiff and Respondent.

OPINION

HUFFMAN, J.—Ronald Robert Koury and German Nava Hernandez separately appeal from their judgments of convictions entered after their pretrial motions were denied and they pleaded guilty[1] to charges of possessing cocaine and marijuana for sale (Health & Saf. Code, §§ 11351, 11359, respectively) and admitted the truth of the allegations that they possessed more than 28.5 grams of cocaine or more than 57 grams of a substance containing cocaine (Pen. Code, § 1203.073, subd. (b)(1)).[2] We have determined the denials of their respective motions to suppress under section 1538.5 were error and accordingly reverse the judgments with directions. As we shall explain, based on the facts presented, both Koury and Hernandez had sufficient standing to challenge the search and seizure in this case.

PROCEDURAL AND FACTUAL BACKGROUND

On May 20, 1987, Buena Park Police Detectives Michael Timothy Cook and Edison Hornung, along with other deputies, served a search warrant on a residence located at 2333 Coronet in the City of Anaheim, California. Upon arrival at that address, Hornung found Koury and his wife Deanne in the front yard of the residence. Cook and Hornung then entered the house and conducted a search.

On the floor by the bed in the master bedroom, Hornung found a closed camel colored zippered pouch containing credit cards issued to Hernandez, a piece of newspaper, 13 grams of cocaine and a set of car keys which fit a car parked outside of the residence registered to Hernandez. He also found a locked light brown briefcase under the bed. Forcing it open, he found a metal-plated Social Security card in Hernandez's name, a green identification card with Hernandez's name and picture on it and 12 one-ounce packages of cocaine. In addition, he found a large gray suitcase on the bed or just to the side of the bed. He pried it open and found it contained 24 one-pound packages of marijuana. He found no identification in or on the suitcase.

---

[1] Although Koury's change of plea form states he was pleading "nolo contendere," the transcript of the change of plea hearing and the court minutes reflect he pleaded guilty.

[2] All statutory references are to the Penal Code unless otherwise specified. When referring to statutory subparts we omit repetition of the word "subdivision."

In that same bedroom, Hornung found a wallet on a dresser which contained a small amount of money, Koury's driver's license and a key that fit the residence's front door deadbolt lock. He also noticed several items of men's clothing in the bedroom closet and found another briefcase under the bed. This second briefcase was a darker brown than the first and contained several pieces of mail, including letters addressed to Koury at an address in Romoland, California, and a subpoena addressed to him at the Coronet address.

Cook, who had followed Hornung into the master bedroom, saw the gray suitcase and light brown briefcase after they had been opened by Hornung. Seeing the cocaine and marijuana, along with numerous handguns and rifles, Cook believed the house was being used as a base for the distribution of controlled substances. The officers seized the contraband, weapons, documents and containers.

Although the record is unclear as to exactly when the arrests were made, Koury, his wife and Hernandez were all arrested that same day. A booking search of Hernandez produced a key which fit the gray suitcase earlier found in the master bedroom. Koury, his wife and Hernandez were subsequently charged by information with possession of cocaine and marijuana for sale and it was alleged they possessed more than 28.5 grams of cocaine or more than 57 grams of a substance containing cocaine.

On July 31, 1987, Hernandez moved under section 1538.5 to suppress the evidence found during the search of the Coronet residence on grounds the search and seizure were unreasonable because they were conducted without a warrant as to his personal suitcase, light brown briefcase and zippered pouch, and the method of executing the warrant on the residence was constitutionally infirm.

On August 3, 1987, Koury filed motions to set aside the information under section 995, to traverse the affidavit in support of the search warrant and to suppress evidence under sections 1538.5, 1539 and 1540 and to discover the identity of confidential informants. His motion to suppress was based upon alleged negligent and intentional misrepresentations and omissions in the affidavit in support of the search warrant, and he sought the identity of the confidential informants in order to challenge the informants' statements in the search warrant.

On August 10, 1987, Koury filed a joinder in any and all motions brought by his codefendants and on September 29, 1987, Hernandez filed his joinder in any and all motions brought by Koury and/or his wife. The superior

court file of which we take judicial notice reveals that Deanne Koury also filed joinders in both Koury's and Hernandez's motions.

At the beginning of the hearing on the pretrial motions, counsel for Koury suggested the issue of standing be addressed first. For the record the deputy district attorney objected to Koury and Hernandez bringing the suppression motions without showing they each had standing. He had no objection to Deanne Koury's standing to bring a suppression motion.

After some discussion, the court determined Koury and Hernandez had to present evidence to show each had standing. Koury then moved to have the search warrant and the affidavit supporting it admitted into evidence. The court ordered the originals of the documents for review and took under submission the question of their admissibility.

In the meantime, Officer Cook was called to the stand and testified consistently with the facts stated above. The court did not allow him to give his opinion as to whether Koury lived at the Coronet residence. Defense counsel then attempted to have the search warrant and affidavit entered into evidence as official court records. The court would not allow either into evidence as to the motion to suppress on grounds the statements relevant to the motion were hearsay, nor would the court take judicial notice of them.

Defense counsel then switched to the confidential informant disclosure motion to attempt to prove the informants were material witnesses on the issue of standing and crucial to Koury's and Hernandez's defenses. At that time, the court admitted into evidence a certified copy of the search warrant and supporting affidavit for purposes of the confidential informant motion only.

Officer Cook was again called to testify. He stated that on May 13, 1987, the Buena Park Police Department received information from a confidential informant that Koury and his wife Deanne sold narcotics. The informant had known the Kourys for a year and a half and stated they sold drugs from the 2333 Coronet address and that Hernandez was staying at the residence and had been there for a few days. Within a week, a second informant called the police department giving information that the Kourys sold drugs from the Coronet residence.

Based on this information, Cook and Officer Hornung conducted a three-hour surveillance of the residence on May 14, 1987. During this time, they observed quite a bit of foot traffic to and from the residence as well as noticing cars pulling up to the house, their occupants going inside the house for a few minutes and then returning and driving away. They also saw

Koury bicycle back and forth numerous times between the Coronet house and another house on Moraga, a street nearby. Cook did not notice Koury use a key to enter the Coronet house during this time.

Hornung testified consistent with Cook regarding the foot and car traffic to the Coronet residence and to seeing Koury pedal between the two houses each day of the surveillance. Based on their observations during the three days of surveillance, the officers applied for, and were issued, a search warrant for the person of Koury and the residence at 2333 Coronet.

Hernandez was then called to testify. He stated he was the owner of the light brown briefcase and the gray suitcase. He had taken them into the Coronet residence and placed them where the officers found them. Although he had another residence in Buena Park, he said he occasionally lived at the Coronet house. He was only visiting the residence the day of the search.

Subject to a motion to strike, Hernandez also admitted the contraband found within the luggage was his. The court subsequently struck his admission of ownership of the contraband without explanation.

After the court stated its intent to rule against Koury on the issue of standing, he reluctantly took the stand to testify on that issue and about the materiality of the confidential informant. He said his primary residence was in Hemet, California, and his wife and children lived at the Coronet address. He admitted he was separated from his wife, but stated he often stayed over at the Coronet residence to visit with his children. He stated he stayed there "a few nights a week at least. Maybe more." He had spent the night with his family the day before the police searched the Coronet home, and he stated the confidential informant could testify that he was not "at that time" living at the Coronet address but just visiting his children.

He also testified he had paid the rent at the Coronet house up to March of 1987 and he still kept some clothing in the master bedroom. He stated the papers found inside the dark brown briefcase under the bed in the master bedroom were his personal papers. He had not seen the other briefcase or the suitcase belonging to Hernandez before the day of the search and he did not know either contained contraband.

After considering all the evidence before it, the court gave its tentative ruling on the motions as follows: "There's a motion to disclose the informant for the express purpose of assisting counsel in litigating the standing issue. I'm going to deny the request to disclose the informant on that particular issue.

"A motion to—as to whether the defendants have standing to litigate the 1538. I'm going to deny the motion on the basis that I find that they do not have standing on the basis of the evidence introduced in the hearing." The court then invited counsel to "place something on the record." After further legal arguments on the issue of standing, the court stated: "It's not my intent to add any degree of wisdom to the wealth of knowledge concerning search of containers and others, it's not my intent to try to cover commercial transactions, movement of persons in the country, taxis, baggage, the open courtroom.

"I simply find that the defendants have not demonstrated that on the evidence that they have presented here to my satisfaction that they expected or anticipated privacy on the matters that were searched here.

"And I'm finding that they do not have standing.

"And I think it's a good issue, and I think we have some people at the District Court of Appeals [sic] that can review it based on the record that we have here.

"That's the best I can do today for you gentlemen."

With denial of these motions, counsel for Deanne Koury elected to withdraw her section 1538.5 motion rather than proceed at that time and Koury's counsel did not ask the trial court to proceed or rule on the section 995 motion.

On October 19, 1987, all three codefendants pleaded guilty to the charges and sentencing was scheduled for December 14, 1987. At that time, Koury and Hernandez were placed on three years formal probation conditioned upon, among other things, serving 180 and 327 days in custody, respectively. Deanne's sentencing was continued to another date.

Koury and Hernandez timely appeal from their judgments of conviction.

DISCUSSION

A. CONTENTIONS

Koury and Hernandez each challenge the trial court's ruling he did not have standing to bring his section 1538.5 suppression motion. Each argues he had a reasonable expectation of privacy in the items seized and the areas searched; specifically, Koury claims a privacy interest in the residence and

all items found inside and Hernandez claims a privacy interest in the residence and in his personal luggage items found there.

Hernandez additionally contends the court erroneously failed to receive and consider all the evidence necessary to determine the issue of standing. He specifically claims error in the court's refusal to admit into evidence the affidavit in support of the search warrant and statements contained there that he was staying at the residence.

Koury also asserts the trial court erroneously prevented him from introducing evidence to show he had standing to contest the search and seizure here; i.e., the opinion of Officer Cook as to whether Koury was a resident of the Coronet house should have been admitted, the identity of the confidential informants should have been disclosed, and all relevant evidence should have been admitted under Proposition 8. (Cal. Const., art. I, § 28(d).)

## B. STANDING

█ Where, as here, the facts are not in dispute, the appellate court may review the question of standing de novo. (*Rakas* v. *Illinois* (1978) 439 U.S. 128, 131, fn. 1 [58 L.Ed.2d 387, 393, 99 S.Ct. 421]; *People* v. *Workman* (1989) 209 Cal.App.3d 687, 694-695 [257 Cal.Rptr. 753].) We thus proceed to review Koury and Hernandez's claims.

█ When a criminal defendant moves to suppress evidence on the ground it was seized in violation of his constitutional rights, the prosecution may contest whether the defendant is the proper party to challenge the claim of illegal police activity. Under former California law, a defendant had standing to object to the introduction of evidence seized in violation of the rights of a third person. (*People* v. *Martin* (1955) 45 Cal.2d 755, 761 [290 P.2d 855].) After the passage of Proposition 8, however, this vicarious exclusionary rule is no longer applicable and a defendant's right to object to the seized evidence is controlled by federal law. (*In re Lance W.* (1985) 37 Cal.3d 873, 879 [210 Cal.Rptr. 631, 694 P.2d 744].) Although traditionally framed as a question of "standing," *Rakas* v. *Illinois, supra,* 439 U.S. at page 133 [58 L.Ed.2d at p. 394], noted the issue should be recognized as "one involving the substantive question of whether or not the proponent of the motion to suppress has had his [or her] own Fourth Amendment rights infringed by the search and seizure which he [or she] seeks to challenge." Thus, Koury and Hernandez each have the burden of showing his own Fourth Amendment rights were violated by the search and seizure. (*Rakas* v. *Illinois, supra,* 439 U.S. at pp. 130-131, fn. 1 [58 L.Ed.2d at p. 393].)

■ Generally, an illegal search only violates the rights of those who have a legitimate expectation of privacy in the place searched or in the property seized. (*United States* v. *Salvucci* (1980) 448 U.S. 83, 91-92 [65 L.Ed.2d 619, 628, 100 S.Ct. 2547].) "A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed." (*Rakas* v. *Illinois, supra,* 439 U.S. at p. 134 [58 L.Ed.2d at p. 395].) While an ownership or possessory interest in the searched premises is not necessarily required to assert a reasonable expectation of privacy under the Fourth Amendment, the mere legitimate presence there by invitation or otherwise, without more, is insufficient to create a protectable expectation. (*Id.* at pp. 142-143 [58 L.Ed.2d at pp. 400-401].) What a defendant must show is " 'an actual (subjective) expectation of privacy . . .' [and that the expectation is] 'one that society is prepared to recognize as "reasonable." ' " (*Smith* v. *Maryland* (1979) 442 U.S. 735, 740 [61 L.Ed.2d 220, 226-227, 99 S.Ct. 2577], quoting *Katz* v. *United States* (1967) 389 U.S. 347, 361 [19 L.Ed.2d 576, 568, 88 S.Ct. 507].)

As the parties point out, and the diverse cases discussing standing reveal, there is no set formula for the showing required by a defendant necessary to establish standing. Most of the cases, however, look to the sum of the evidence or the "totality of the circumstances" to determine if a defendant has a legitimate expectation of privacy in the premises of another.

Some of the factors to consider in the determination include: " 'whether the defendant has a [property or] possessory interest in the thing seized or the place searched; whether he [or she] has the right to exclude others from that place; whether he [or she] has exhibited a subjective expectation that it would remain free from governmental invasion, whether he [or she] took normal precautions to maintain . . . privacy and whether he [or she] was legitimately on the premises.' " ■ ■ ■ (*United States* v. *Briones-Garza* (5th Cir. 1982) 680 F.2d 417, 420, cert. den. (1982) 459 U.S. 916 [74 L.Ed.2d 181, 103 S.Ct. 229], quoting *United States* v. *Haydel* (5th Cir. 1981) 649 F.2d 1152, 1155, cert. den. (1982) 455 U.S. 1022 [72 L.Ed.2d 140, 102 S.Ct. 1721].)[3] While generally one of these factors alone is insufficient to establish standing of a third party on the premises of another (cf. *United States* v. *Garcia* (11th Cir. 1984) 741 F.2d 363, 365-366; *United States* v. *Robertson* (9th Cir. 1979) 606 F.2d 853, 858, fn. 2; and cases we cite below), the greater the number of these factors and the greater their strength shown by the facts of a particular case, the more likely a protectable expectation of privacy will be found.

---

[3] While lower federal court cases are not binding precedent on this court, they are persuasive authority reflecting federal law.

1. *Koury's Claim of Standing*

 Here Koury claims a reasonable expectation of privacy in the Coronet residence and the items seized inside the residence on grounds it was either his personal residence and drug distribution center, or a place he frequently visited overnight to spend time with his children while his estranged wife sold drugs out of the house. Federal law would find standing under either alternative based on the totality of facts in this case.

 In *Bumper* v. *North Carolina* (1968) 391 U.S. 543, 548, footnote 11 [20 L.Ed.2d 797, 802, 88 S.Ct. 1788], the United States Supreme Court summarily concluded there could "be no question of the petitioner's standing" to challenge a search of his grandmother's home during his absence in light of the fact that he regularly resided there as well. *Rakas* v. *Illinois, supra,* 439 U.S. 128, 136 [58 L.Ed.2d 387, 396], approvingly referred to *Bumper* as a case in which the defendant had standing because he had a "substantial possessory interest in . . . the house searched . . . ." In this connection, it cannot be said that a person is only protected by the Fourth Amendment at his or her "principal" home; it is possible for a person to have a family-member type of standing by residing regularly but yet not continuously upon the premises. (See 4 LaFave, Search and Seizure (2d ed. 1987) § 11.3(a), pp. 285-286.)

Moreover, once a person establishes a family-member type interest in the residence searched, there is no need to further show an interest in the particular items which were seized by the police. (*United States* v. *Karo* (1984) 468 U.S. 705 [82 L.Ed.2d 530, 104 S.Ct. 3296]; *Mancusi* v. *DeForte* (1968) 392 U.S. 364 [20 L.Ed.2d 1154, 88 S.Ct. 2120]; *United States* v. *Issacs* (9th Cir. 1983) 708 F.2d 1365, where the resident was held to have standing to challenge the search of a safe and notations found in journals kept within the safe, even though he disclaimed ownership or awareness of the journals at trial; *United States* v. *Perez* (8th Cir. 1983) 700 F.2d 1232, where the resident was determined to have standing to challenge the search of his guest's luggage in his home.)

In addition, the post-*Rakas* cases generally have concluded that a person lawfully present on the premises has standing when he or she is more than a "casual visitor." (See, e.g., *United States* v. *Salvador* (9th Cir. 1984) 740 F.2d 752, 753, where the defendants who were present at the time of the search and who had stayed overnight at their relatives' house and "for longer periods on prior occasions" and "kept personal belongings at the residence" were found to have standing; *United States* v. *Pollock* (9th Cir. 1984) 726 F.2d 1456, 1457, where the defendant was held to have standing

based upon "joint control and supervision" of the place by operating an illegal drug lab there.)

Further, as noted in *People* v. *Workman, supra,* 209 Cal.App.3d 687, 695, numerous federal cases have held the "participation in an arrangement which indicates joint control and supervision of the place searched or the property seized is enough to establish a protected privacy interest." (See cases cited there at pp. 695-696.) The court in *Workman* distinguished the federal cases from the facts in that case on grounds the defendant coconspirators did not show any present interest in the contraband at the time of the search and there was no evidence presented from which the court could infer a right of joint control or supervision of the premises or documents seized at the time of the search. (*Id.* at p. 696.)

■ The facts of this case, as revealed at the suppression motion hearing, however, show Koury did have a legitimate expectation of privacy in the premises searched. Koury, though estranged from his wife at the time of the search and seizure, was still Deanne Koury's legal husband and the father of the children who resided at the Coronet house and whom he regularly visited overnight. He had a key to the residence and was observed during three days of surveillance going to and from the residence unrestricted. This is some evidence from which a court can infer a right of joint control or supervision of the Coronet residence.

In addition, at the time of the search, the officers found Koury, along with his wife, in the front yard of the residence and found personal papers inside a briefcase and items of clothing in the master bedroom of the residence which Koury admitted were his. At least one document found in the briefcase was a subpoena addressed to Koury at the Coronet address. The officers also found his wallet on top of the dresser in the master bedroom. Although Koury denied he lived at the Coronet house and dealt drugs there, this denial consisted of merely testifying his primary residence was elsewhere.

Further, the officers executing the search warrant on the residence believed the house was being used as a base for the distribution of controlled substances. The testimony of the officers who conducted the surveillance of the residence before the search portrayed Koury as an active participant in the drug transactions occurring at the house.

Koury was not a mere casual visitor to 2333 Coronet. Rather the facts show he had a substantial possessory interest in those premises. Even if Koury were not considered a family-member type under *Bumper,* he could easily be classified as an invited overnight guest who had permission to be

on the premises and had unrestricted access to the premises when the search occurred.

Koury's factual case is not that dissimilar from the guest in *Jones* v. *United States* (1960) 362 U.S. 257, 259 [4 L.Ed.2d 697, 701, 80 S.Ct. 725, 78 A.L.R.2d 233] who was given the key to an apartment of a friend, was on the premises at the time of the search, had slept there "maybe a night" and had clothes and possessions in the residence. Two of the rules of standing announced in *Jones* have since been abandoned. The rule of automatic standing for defendants charged with crimes involving possession of the evidence seized was abandoned in *United States* v. *Salvucci, supra,* 448 U.S. 83, 85 [65 L.Ed.2d 619, 623-624]. The rule affording standing to those " 'legitimately on the premises where a search occurs . . .' " was discarded in *Rakas* v. *Illinois, supra,* 439 U.S. 128, 142 [58 L.Ed.2d 387, 400]. The facts in *Jones,* however, were determined to be sufficient to show the guest in that case had an expectation of privacy in the premises. (*Ibid.*)

Moreover, even though Koury disclaimed ownership or awareness of the contraband, it would appear he would have an interest in the items seized due to his involvement in the drug transactions. (See *United States* v. *Echegoyen* (9th Cir. 1986) 799 F.2d 1271, 1277.) Koury thus has standing to bring a section 1538.5 motion to challenge the search and seizure in this case.

## 2. *Hernandez's Claim of Standing*

Hernandez claims a reasonable expectation of privacy in the Coronet residence based on evidence he argues the trial court should have admitted into evidence; i.e., a statement by one of the confidential informants that he was "staying at the residence." He bases his privacy expectation in the luggage searched and seized on grounds of personal ownership and the fact all pieces of luggage were closed or locked to show his expectation of privacy. We conclude on the facts presented Hernandez has only demonstrated a reasonable expectation of privacy in his luggage and thus only has standing to challenge their search and seizure.

Hernandez goes to great length arguing the trial court committed reversible error in ruling the statement of a confidential informant would not be admitted into evidence because it was hearsay, thereby precluding him from establishing standing to contest the search of the residence. He also claims the refusal by the court to then disclose the confidential informant was error and likewise precluded necessary information which would have been helpful to the standing issue. Regardless of the determination of these issues, which we need not reach, Hernandez's own testimony places him in the

Coronet residence as only a visiting guest on the day of the search. He did not attempt to show at the hearing that he was more than a casual visitor on the day of the search, nor did he attempt to show that he was involved in or had joint supervision and control of any drug operations going on at the residence.

■ As noted earlier, the mere legitimate presence on the searched premises is insufficient by itself to create a protectable expectation of privacy in the residence of another for purposes of a Fourth Amendment challenge. (*People* v. *Ooley* (1985) 169 Cal.App.3d 197, 202 [215 Cal.Rptr. 112].)[4] However, such presence on the premises is relevant to a determination whether a defendant had a legitimate expectation of privacy in items he or she owned or possessed which were actually searched and seized within the residence. (*Rakas* v. *Illinois, supra,* 439 U.S. at p. 142, fn. 11 [58 L.Ed.2d at p. 400].)

■ Like the defendant in *People* v. *Root* (1985) 172 Cal.App.3d 774, 778 [218 Cal.Rptr. 182], who claimed an expectation of privacy in an opaque white plastic bag placed in another person's car, Hernandez claims a privacy interest in his luggage pieces placed inside the Coronet residence. Both Root and Hernandez specifically claimed a proprietary interest in the property each had placed on someone else's property. Additional facts in that case, however, distinguish it from this case and support our holding that Hernandez has standing to object to the search and seizure of his luggage.

In *Root,* the defendant relinquished physical control of his bag to another person by placing it in that person's car and leaving. He was not present at the time of the search and seizure and did not present evidence the bag was "sealed from outside view, so as to indicate [his] expectation of privacy as to the contents of the bag." (172 Cal.App.3d at p. 779.) Here, Hernandez had carried his luggage inside the Coronet residence and stayed there to visit. He was present at the time of the search and seizure of his luggage, and all pieces of luggage at that time were closed to outside view, so as to indicate his expectation of privacy as to their contents.

Hernandez's testimony the luggage was his and was closed from plain view is bolstered by the testimony of Officer Hornung. Hornung stated the zippered pouch was closed when he found it. When he opened it he found some contraband and several credit cards in Hernandez's name and a set of car keys belonging to him. He also testified the gray suitcase and the light

---

[4] Hernandez himself conceded as much in his supplemental points and authorities supporting his suppression motion below when he stated he had no standing to challenge the search of the premises itself because he was not the owner or tenant.

brown briefcase were closed and locked and had to be pried open to see their contents. Besides contraband in the suitcase and briefcase, he found a Social Security card and picture identification card for Hernandez inside the briefcase.

Although a determination of expectation of privacy generally should not be made based on a distinction between " 'worthy' " and " 'unworthy' " containers, an appraisal of the container is nevertheless a factor which "manifests [the scope of] an individual's expectation of privacy . . . ." (*United States* v. *Ross* (1982) 456 U.S. 798, 822, fn. 30 [72 L.Ed.2d 572, 592, 102 S.Ct. 2157].) The containers here were a closed pouch, a locked briefcase and a locked suitcase. ■ ■■■■ ■ Such evidence, coupled with the factors he was legitimately present in the residence[5] and was present during the search, is sufficient to show Hernandez had a legitimate expectation of privacy in those containers. The trial court thus erred in finding he had no standing to bring his section 1538.5 suppression motion as to the search and seizure of his own luggage.

■ The People attempt to argue the merits of the section 1538.5 motion by justifying the seizure and search of the luggage belonging to Hernandez. However, to reach the merits of that motion on this incomplete record, cut short because of the trial court's finding there was no standing to proceed, would be to deny Hernandez a full and complete hearing on his suppression motion. (*People* v. *Cella* (1981) 114 Cal.App.3d 905, 914 [170 Cal.Rptr. 915].)

Since it is not possible for this court to assess the extent to which the erroneous rulings regarding standing and the denials of the suppression motions led to Koury's or Hernandez's decisions to enter guilty pleas, the judgments must be reversed. (*People* v. *Miller* (1983) 33 Cal.3d 545, 551-552 [189 Cal.Rptr. 519, 658 P.2d 1320].) In view of our determination, we need not address Koury's and Hernandez's other contentions.

### DISPOSITION

The judgment is reversed and the cause remanded to the superior court with directions to vacate the guilty pleas of either Koury or Hernandez if he makes an appropriate motion within 30 days after this opinion becomes final. In that event, the court is directed to reinstate the original charges contained in the information, if the People so move, and to proceed to trial

---

[5] The fact contraband was found in his possession does not negate the factor he was legitimately on the premises or negate his property interest. (*Simmons* v. *United States* (1968) 390 U.S. 377 [19 L.Ed.2d 1247, 88 S.Ct. 967].)

or make other appropriate disposition.[6] ▮▮ ▮▮▮▮ If no such motion is filed by either Koury or Hernandez, the trial court is directed to reinstate the original judgment for each defendant, respectively.

Kremer, P. J., and Wiener, J., concurred.

---

[6] Because we have determined Hernandez does not have a privacy interest in the Coronet residence, if he elects to proceed with his suppression motion on remand, he does not have standing to challenge the entry of that residence under section 1531. (*Rawlings* v. *Kentucky* (1980) 448 U.S. 98 [65 L.Ed.2d 633, 100 S.Ct. 2556]; *Rakas* v. *Illinois, supra,* 439 U.S. 128.) Nor may Koury, who joined in Hernandez's motion below, challenge the entry. Koury was served the search warrant and arrested outside the residence and would not have been harmed by any illegal entry into the residence.