Filed 9/25/14  In re Andrew B. CA5

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re ANDREW B., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE, | F067627 |
| Plaintiff and Respondent, | (Super. Ct. No. JW130178) |
| v. | |
| ANDREW B., | **OPINION** |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Kern County.  Peter A. Warmerdam, Judge.

Candice L. Christensen, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Catherine Chatman and Raymond L. Brosterhous II, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Andrew B. appeals from a judgment entered, after the denial of his motion to suppress and a contested jurisdictional hearing.  The juvenile court found true the

allegations that he transported marijuana (Health & Saf. Code,[1]§ 11360, subd. (a)), and drove with a suspended license (Veh. Code, §14601.1, subd. (a)), but it found not true the allegation he possessed marijuana for purpose of sales (§ 11359). Andrew was adjudged a ward of the court and committed to juvenile hall for 120 days, with credit for 107 days already spent in confinement.

On appeal, Andrew contends the juvenile court erred in denying his motion to suppress, which was based on the lack of *Miranda*[2] warnings given before he was asked whether he had drugs in his car. He further contends we must reverse the court's finding he transported marijuana in violation of section 11360, because the court found insufficient evidence he possessed the marijuana for purpose of sales. His contention is based on the recent amendment to section 11379, which defines transportation to add an intent-to-sell element. Although section 11360 was not similarly amended, Andrew argues equal protection principles entitle him to the benefit of the new definition of transportation in section 11379. We reject these contentions and affirm the judgment.

## *FACTS*[3]

Around 8:05 p.m., on January 19, 2013, California Highway Patrol Officer Jeffrey Adels stopped Andrew for exceeding the speed limit. Andrew was driving a rental car, and there were two other passengers inside the car with him.

When Officer Adels made contact with Andrew, the officer noticed "[t]he odor of marijuana emitting from the vehicle." Officer Adels testified, "I let him know that I observed the odor, and I asked him for his driver's license, registration and insurance." After Andrew replied that he was not sure if he had a driver's license, Officer Adels asked him to step out of the car.

---

[1]    Further statutory references are to the Health and Safety Code unless otherwise specified.
[2]    *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*).
[3]    Our factual summary focuses on facts pertinent to Andrew's challenge to the denial of his motion to suppress, which was heard at the time of the jurisdictional hearing on May 20, 2013. A detailed recitation of the facts is unnecessary to resolve his equal protection claim.

In the meantime, Kern County Deputy Sheriff Mark Chambless arrived to provide backup for the traffic stop. Officer Adels conducted a "DMV check" and discovered Andrew had a suspended driver's license. Deputy Chambless took over and "watched" Andrew, while Officer Adels went to deal with the other passengers in Andrew's car.

Deputy Chambless observed that Andrew "seemed to be nervous" and "kept fidgeting with his pants and putting his hands in his pockets." The deputy further testified he could smell marijuana when he was "dealing" with Andrew and he also smelled marijuana in Andrew's car when he "approached it later."

Deputy Chambless asked if he could search Andrew for any guns, drugs, or knives for the deputy's safety. Andrew consented to be searched. As the deputy was conducting a patdown search, he felt a small, oblong object and removed it from Andrew's pocket. Andrew identified it as his mother's Vicodin.

Deputy Chambless next asked Andrew if he had any drugs, guns, or knives inside his car. Andrew replied that there were two bags of marijuana in the center console. Deputy Chambless confined Andrew in the back of the patrol car, together with Andrew's two passengers, in order for law enforcement to conduct a search of his car.

Deputy Chambless testified the search proceeded as follows:

"A K-9 officer arrived—or standard protocol is to not search the vehicle until the K-9 first goes through it. K-9 officer told me that his partner, Jack, alerted to an orange painter's bucket in the trunk of the vehicle. Once he told me the dog alerted, then I took over the search and did it myself."

Inside the bucket in Andrew's trunk, Deputy Chambless found a backpack which contained a "large amount of marijuana." The deputy explained: "It was three large bags. The total weight was just under three pounds. The bags range from approximately … 260 grams to 500 grams." In the deputy's opinion, based on his training and experience, this amount "would be considered use for sales." In addition, he found in the center console two baggies of marijuana, each containing approximately 5.5 to 6 grams.

3

After finding the marijuana, Deputy Chambless read Andrew his *Miranda* rights. Andrew indicated he understood his rights and told the deputy he did not know anything about the marijuana found in the trunk of the car. Deputy Chambless placed Andrew under arrest and transported him to juvenile hall. As the deputy was pulling into the parking lot, Andrew "spontaneously" said he had lied to the deputy and the marijuana found in the trunk belonged to a friend. Andrew claimed that for the past four days, he had been keeping the marijuana in his closet at home. He put the marijuana in the car and took it with him because he did not want to get caught having it in his room.

## *DISCUSSION*

### I.    *Motion to Suppress*

Andrew moved to suppress the marijuana discovered during the search of his car on the ground the evidence was the product of police questioning which violated his *Miranda* rights.[4]  We need not resolve the *Miranda* issue, however, because the marijuana found in Andrew's car was admissible under the inevitable discovery doctrine.[5]

When reviewing a trial court's ruling on a motion to suppress evidence obtained in an allegedly invalid search, we defer to the trial court's factual findings, whether express or implied, where supported by substantial evidence and exercise our independent judgment to measure the facts as found against the constitutional standard of reasonableness.  (*People v. Leyba* (1981) 29 Cal.3d 591, 596-597.)  We will affirm the

---

[4]    For the first time on appeal, Andrew also contends the patdown search conducted by Deputy Chambless was unjustified under the circumstances. Because Andrew did not challenge the legality of the patdown search in the juvenile court, he has forfeited the issue on appeal. Even if he preserved his claim, however, we would not need to resolve it for the same reason we do not reach his *Miranda* claim: the marijuana he sought to suppress was admissible under the inevitable discovery doctrine.

[5]    On August 7, 2014, this court sent an issue letter to the parties requesting supplemental briefing on the applicability of the inevitable discovery doctrine and the automobile exception to the warrant requirement, implicitly raised by the prosecutor's arguments below but not addressed in the parties' briefing on appeal.

trial court's ruling if correct on any theory of applicable law, even if for reasons different than those given by the trial court.  (*People v. Evans* (2011) 200 Cal.App.4th 735, 742 (*Evans*); *People v. Hua* (2008) 158 Cal.App.4th 1027, 1033.)

Under the inevitable discovery doctrine, illegally seized evidence is admissible if "it would have been discovered by the police through lawful means."  (*People v. Robles* (2000) 23 Cal.4th 789, 800.)  The doctrine is "'an extrapolation from the independent source doctrine:  *Since* the tainted evidence would be admissible if in fact discovered through an independent source, it should be admissible if it inevitably would have been discovered.'  [Citation.]  The purpose of the inevitable discovery rule is to prevent the setting aside of convictions that would have been obtained without police misconduct. [Citation.]  The burden of establishing that illegally seized evidence is admissible under the rule rests upon the government.  [Citations.]"  (*Id*. at pp. 800-801, fn. omitted.)

To justify application of the inevitable discovery doctrine, the government "must demonstrate by a preponderance of the evidence that, due to a separate line of investigation, application of routine police procedures, or some other circumstance, the drugs seized from the [car] would have been discovered by lawful means.  The showing must be based not on speculation but on 'demonstrated historical facts capable of ready verification or impeachment.' [Citation.]"  (*People v. Hughston* (2008) 168 Cal.App.4th 1062, 1072.)  "The test is not whether 'the police would have certainly discovered the tainted evidence, rather, it is only necessary to show a reasonably strong probability that they would have.' [Citations.]"  (*In re Rudy F.* (2004) 117 Cal.App.4th 1124, 1136.)

In opposing the motion to suppress, the prosecutor argued that Andrew's incriminating statements in response to Deputy Chambless questioning him about the presence of drugs in his car were "really kind of peripheral to this entire case" because, even if Andrew had denied there were drugs in the car, it was "inevitable" the evidence

5

would have been discovered "based on the smell of the marijuana coming from the car."[6] Defense counsel did not address the prosecutor's argument about the inevitability of the marijuana's discovery except to assert "*Miranda* rights are not periphery," which was plainly not the thrust of the prosecutor's argument. The prosecutor's argument, which implicitly invoked the inevitable discovery doctrine, is supported by substantial evidence.

Officer Adels testified that when he made contact with Andrew, he noticed the odor of marijuana "emitting" from the car and he specifically pointed this out to Andrew, before asking him to step out of the car, suggesting the officer would have returned to investigate the marijuana odor further after he finished running the DMV check on Andrew. But Deputy Chambless soon arrived as backup and stayed to watch Andrew, while Officer Adels returned to Andrew's car to make contact with the other passengers. The unfolding circumstances, including Officer Adels' continuing involvement and the separate arrival of a K-9 officer, indicated the law enforcement officers in this case were treating this as more than just a routine traffic stop and were simultaneously pursuing multiple lines of investigation.

Moreover, Deputy Chambless testified that, when he contacted Andrew, he seemed nervous and continued fidgeting with his hands in his pocket, and the deputy could smell marijuana both when he was dealing with Andrew and later when he approached Andrew's car. In accordance with what Officer Chambless described as

---

[6] As relevant to the inevitable discovery doctrine, the prosecutor specifically argued: "[T]he statements are really kind of peripheral to this entire case, your Honor. The officers— and I do say plural, officers because the arrival of Deputy Chambless was almost concurrent with the arrival of Adels of the California Highway Patrol. Actually what's described as a back-up treatment with multiple people in a car and the minor being asked to exit the car based on the fact that he didn't have a driver's license, as well as the fact that the initial officer noted the smell of marijuana. [¶] And while Deputy Chambless was dealing with the minor, he also noticed the smell of marijuana. When they approached the car, asked foundational questions, very standard in police work that are involving—is there anything—knives, guns or drugs in the car—it would have been inevitable whether the minor stated no there was not based on the smell of the marijuana coming from the car; the car was searched and Deputy Chambless stated searched by a K-9 officer .…"

"standard protocol," the K-9 officer arrived and went through Andrew's car first with Deputy Chambless taking over the search after the officer's dog alerted on the bucket in the trunk of the car.

The evidence before the juvenile court demonstrated a reasonably strong probability that, due to separate lines of investigation and the application of routine police procedures, the law enforcement officers would have discovered the marijuana in Andrew's car by lawful means regardless of his incriminating statements. In light of Andrew's nervous behavior and the noticeable odor of marijuana, both on his person and coming from his car, the officers could lawfully search the car without a warrant. Under the automobile exception to the search warrant requirement, a police officer may lawfully search a vehicle without a warrant if the search is "'based on facts that would justify the issuance of a warrant even through a warrant has not actually been obtained.'" (*Evans, supra,* 200 Cal.App.4th at p. 753 [discussing the automobile exception]; *People v. Waxler* (2014) 224 Cal.App.4th 712, 719 [California courts have concluded odor of unburned marijuana or observation of fresh marijuana may furnish probable cause to search a vehicle under automobile exception to warrant requirement].) That was the case here.

## II. *Equal Protection*

The juvenile court found Andrew violated section 11360, subdivision (a), which provides that "every person who transports … any marijuana shall be punished by imprisonment pursuant to subdivision (h) of Section 1170 of the Penal Code for a period of two, three or four years."

Section 11379 similarly provides that "every person who transports … any controlled substance … shall be punished by imprisonment pursuant to subdivision (h) of Section 1170 of the Penal Code for a period of two, three, or four years." (§ 11379, subd. (a).) Effective January 1, 2014, section 11379 was amended to add subdivision (c), which states, "For purposes of this section 'transports' means to transport for sale."

7

While recognizing courts have consistently interpreted section 11360 to apply to the transportation of marijuana both for personal use and for purpose of sales, Andrew contends he should be given the benefit of the intent-to-sell requirement added to section 11379 because he is similarly situated to individuals who transport controlled substances in violation of that section, and there can be no plausible reason for adding the requirement to section 11379 but not to section 11360.

Because the juvenile court found insufficient evidence Andrew possessed the marijuana found in his car for purpose of sales,[7] Andrew argues the court's true finding on the section 11360 allegations violates his right to equal protection. Assuming *arguendo* Andrew has not forfeited his claim (as the People assert), and the amendment to section 11379 applies retroactively (as Andrew asserts), we reject his equal protection claim on the merits.

"'The first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner.' [Citations.]" (*People v. Hofsheier* (2006) 37 Cal.4th 1185, 1199 (*Hofsheier*).) The inquiry is not "'whether persons are similarly situated for all purposes, but "whether they are similarly situated for purposes of the law challenged."' [Citations.]" (*Id.* at pp. 1199-1200.) "If persons are not similarly situated for purposes of the law, an equal protection claim fails at the threshold." (*People v. Buffington* (1999) 74 Cal.App.4th 1149, 1155.)

Generally, "'"[p]ersons convicted of *different* crimes are not similarly situated for equal protection purposes." [Citations.] "[I]t is one thing to hold … that persons convicted of the *same crime* cannot be treated differently. It is quite another to hold that persons convicted of *different crimes* must be treated equally." [Citation.]' [Citation.]" (*People v. Barrera* (1993) 14 Cal.App.4th 1555, 1565.) Though this rule is not

---

**7** The juvenile court explained: "As far as the possession [for] sales, certainly the quantity would indicate not for personal use, but there [are] no other indicia of possession for sales."

"absolute," in "most cases … persons who commit different crimes are not similarly situated[.]" (*Hofsheier*, *supra*, 37 Cal.4th at p. 1199.)

Andrew's argument fails at the first step of equal protection analysis. He is not similarly situated to individuals convicted of transporting controlled substances under section 11379 because he was convicted of a *different* crime governed by a separate statutory scheme. As a substance "[m]arijuana is considered less dangerous than other controlled substances and is treated separately in [section] 11357 et seq. [Citations.]" (2 Witkin & Epstein, Cal. Criminal Law (4th ed. 2012) Crimes Against Public Peace and Welfare, § 90, p. 734.) Accordingly, offenses involving marijuana generally carry less severe penalties than offenses involving controlled substances considered to be more dangerous.

We need not determine whether there is a rational basis for the disparity in the definitions of transportation provided in sections 11360 and 11379, in light of our conclusion that individuals who commit these different crimes are not similarly situated. Andrew's conviction for violating section 11360 does not violate equal protection.

### *DISPOSITION*

The judgment is affirmed.

_____
HILL, P. J.

WE CONCUR:

_____
KANE, J.

_____
DETJEN, J.

9