[No. H011894. Sixth Dist. Dec. 22, 1994.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES MARSHALL COWAN, Defendant and Appellant.

## COUNSEL

Frieda Jo Molnar, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Willimson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Ronald S. Matthias and Jeremy Friedlander, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**COTTLE, P. J.**—Defendant James Marshall Cowan was charged by information with possession of methamphetamine for sale (Health & Saf. Code, § 11378). After his motion to suppress evidence (Pen. Code, § 1538.5) was denied, defendant pleaded no contest to the charge. The court suspended imposition of sentence and placed defendant on probation for three years upon condition, inter alia, that he serve four months in county jail. On appeal defendant contends the trial court erred by deciding that defendant "did not have standing to object to the initial entry." For the reasons stated below, we shall affirm the judgment.

### FACTS

At approximately 6:30 p.m. on February 1, 1993, San Jose Police Officers Valencia and Elvander went to apartment 2 at 2331 Pauline Drive to investigate a reported "narcotics violation." Hoyt Henry answered the door. Officer Valencia asked to come in to talk to him, and Henry consented, saying, "Come in, sir." Inside the apartment Valencia saw defendant, another male, and a female. As the police entered, defendant concealed a blue container in a "gap" in the modular couch on which he was sitting. Valencia instructed defendant to "take his hand out real slowly," and defendant did so.

Henry was arrested for being under the influence of a stimulant. Valencia also found methamphetamine in Henry's possession. Officer Elvander then removed the container defendant had concealed in the gap. The container contained off-white powder and rocks which, in turn, contained methamphetamine.

### DISCUSSION

The trial court denied defendant's motion to suppress evidence on the ground that defendant had failed to show that he had standing to contest the

officers' entry into the apartment. ▇▇▇ Defendant's contention that he had standing because "[h]e had visited the apartment several times before and had full use of it even when the host was not at home" is meritless.

▇▇▇ " 'The proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure. [Citations.]' [Citations.]" (*People* v. *Moreno* (1992) 2 Cal.App.4th 577, 582 [3 Cal.Rptr.2d 66].)

"What the moving party must show is ' ". . . an actual (subjective) expectation of privacy," . . . [and the] subjective expectation of privacy is "one that society is prepared to recognize as 'reasonable,' " . . .' [Citations.]" (*People* v. *Moreno*, *supra*, 2 Cal.App.4th at p. 582.)

▇▇▇ The following evidence was adduced on the issue of defendant's standing to contest the officers' entry into the apartment. Mark Hoiem was the owner of apartment 2 at 2331 Pauline Drive. As of February 1, 1993, Hoyt Henry had been living there for "a couple of months." On February 1, Hoiem was out test-driving Henry's car in preparation for buying it. Henry therefore was without a car. At approximately 3:30 p.m. defendant picked up Henry and took him to the post office. Defendant did not come inside the apartment at that time. Defendant did enter the apartment with Henry when the two men returned from the post office. He had Henry's *permission to be in the house.*" (Italics added.) He moved about the apartment, "got a soda out of the refrigerator," used the bathroom and "had full use of the facilities." The police arrived a half hour after defendant and Henry returned to the apartment. According to Henry, when he contacted Hoiem that day, he told Hoiem that defendant "was coming over."

Defendant testified he was not sure if Hoiem knew he was at the apartment on this occasion but that he had been there with Hoiem before, that there was no problem with him being there, and that he had "a standing invitation."

In *Minnesota* v. *Olson* (1990) 495 U.S. 91 [109 L.Ed.2d 85, 110 S.Ct. 1684], the Supreme Court held that ". . . status as an overnight guest is alone enough to show that [a person] had an expectation of privacy in the home that society is prepared to recognize as reasonable." (*Id.* at pp. 96-97 [109 L.Ed.2d at pp. 92-93].) It is uncontested that defendant was not an overnight guest.

The court explained its reasoning as follows: "From the overnight guest's perspective, he seeks shelter in another's home precisely because it provides

him with privacy, a place where he and his possessions will not be disturbed by anyone but his host and those his host allows inside. We are at our most vulnerable when we are asleep because we cannot monitor our safety or the security of our belongings. It is for this reason that . . . when we cannot sleep in our own home we seek out another private place to sleep, whether it be a hotel, or the home of a friend. Society expects at least as much privacy in these places as in a telephone booth—'a temporary private place whose momentary occupants' expectations of freedom from intrusion are recognized as reasonable[.]' [Citation.] [¶] That the guest has a host who has ultimate control of the house is not inconsistent with the guest having a legitimate expectation of privacy. The houseguest is there with the permission of his host, who is willing to share his house and his privacy with his guest. It is unlikely that the guest will be confined to a restricted area of the house; and when the host is away or asleep, the guest will have a measure of control over the premises. The host may admit or exclude from the house as he prefers, but it is unlikely that he will admit someone who wants to see or meet with the guest over the objection of the guest. On the other hand, few houseguests will invite others to visit them while they are guests without consulting their hosts; but the latter, who have the authority to exclude despite the wishes of the guest, will often be accommodating. The point is that hosts will more likely than not respect the privacy interests of their guests, who are entitled to a legitimate expectation of privacy despite the fact that they have no legal interest in the premises and do not have the legal authority to determine who may or may not enter the household. If the untrammeled power to admit and exclude were essential to Fourth Amendment protection, an adult daughter temporarily living in the home of her parents would have no legitimate expectation of privacy because her right to admit or exclude would be subject to her parents' veto." (*Minnesota* v. *Olson, supra,* 495 U.S. at pp. 99-100 [109 L.Ed.2d at pp. 94-95].)

A houseguest therefore has a legitimate expectation of privacy in the home where he is staying because that residence has become his substitute home both in his own mind and in the mind of his host.

While the People concede there may be "extraordinary situations" in which one "need not be an overnight guest to achieve a legitimate expectation of privacy in a residence," they argue that defendant made no such showing here. We agree.

Defendant did not demonstrate that he had authority to be in the apartment alone,[1] to enter without permission, to store anything there, to invite anyone (with or without the host's approval), or to visit without advance notice. Defendant said he had a "standing invitation" and that he had visited in the past when Hoiem was not present, but Henry testified that Hoiem gave permission for defendant to be at the apartment on February 1, which strongly suggested that defendant lacked permission to enter on his own. There was no evidence that defendant had ever stayed at the apartment for an extended time. At most, the evidence showed that defendant was someone who had visited in the past and who was allowed to use the apartment when he visited.

In *U.S.* v. *McNeal* (6th Cir. 1992) 955 F.2d 1067, 1070-1071, the court upheld a lower court finding of no standing based on factual findings that the defendant was nothing more than " 'a casual, transient visitor' " on the night in question. (*Id.*, at p. 1070.) The defendant had such status even though he had a key to the apartment. (*Ibid.*) The court noted that he also had the keys to several other apartments. (*Ibid.*) *McNeal* establishes that the independent ability to use an apartment does not, without more, confer a legitimate expectation of privacy in the place. (See also *U.S.* v. *Maddox* (6th Cir. 1991) 944 F.2d 1223, 1234 [". . . a guest at a party does not have a reasonable expectation of privacy in items found in the house at which the party occurs"].)

Defendant's reliance upon *People* v. *Moreno, supra,* 2 Cal.App.4th 577, is misplaced. *Moreno* held that a babysitter has a legitimate expectation of privacy in the premises where he or she is babysitting. The court reached this conclusion based on the fact that a babysitter "[b]y definition" has "exclusive control" over the premises, "normally has the flexibility to go to any and all parts of the residence in order to discharge his or her duties," and babysitting " 'is a longstanding social custom that serves functions recognized as valuable by society.' " (*Id.*, at pp. 584-585, quoting *Minnesota* v. *Olson, supra,* 495 U.S. at p. 98 [109 L.Ed.2d at p. 94].) Defendant argues that "[b]y parity of reasoning, the same is true here. Appellant had full reign over Mr. Hoiem's residence in that he was permitted to come and go in his host's absence." This argument fails because there was no evidence that defendant was permitted to come and go on his own without either Henry or Hoiem being present and because "the many unique features of the babysitter role transcend the bare fact of simply being on the premises at a

---

[1]Defendant's claim that the evidence showed he "had full use of [the apartment] even when his host was not at home" is belied by the record. The evidence in fact showed only that defendant had "full use of the facilities" on the particular occasion he was there with Henry. Defendant did testify that he had "come and gone" from the premises when Hoiem was not home with Hoiem's permission; however, the record does not reveal whether or not Henry was at the apartment when Hoiem was not.

particular point in time." (*People* v. *Moreno, supra,* 2 Cal.App.4th at p. 586.) In the instant case, the evidence showed that defendant came to the apartment only with Henry's permission. At most, defendant established his legitimate presence on the searched premises by invitation. Defendant did not have control over the premises in any sense and accordingly, he did not have a legitimate expectation of privacy under *Moreno* or *Olson.*

## DISPOSITION

The judgment is affirmed.

Wunderlich, J., and Mihara, J., concurred.

Appellant's petition for review by the Supreme Court was denied March 29, 1995.