Filed 6/27/16  P. v. Reiswig CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE, | C080075 |
| Plaintiff and Respondent, | (Super. Ct. No. SF130576B) |
| v. | |
| BRAD REISWIG, | |
| Defendant and Appellant. | |

After the motion to suppress the evidence against him was denied, defendant Brad Reiswig pled no contest to possessing for sale a controlled substance.  The court placed him on informal probation for five years.  On appeal, defendant contends:  (1) we should review the police personnel records considered by the trial court its in-camera review, and if appropriate, order them produced; and (2) the trial court erred in denying his motion to suppress evidence.  As to the second issue, he contends his detention was not based on reasonable suspicion, there was no valid inventory search of the truck in which

he was a passenger, and his detention during the inventory search was unconstitutionally prolonged.

We agree in part and disagree in part. First, our review of the police personnel records shows no abuse of discretion. Second, as to defendant's motion to suppress evidence, defendant's detention was unlawful, so any evidence obtained from the search of his person must be suppressed as "fruit of the poisonous tree." Therefore, we reverse the trial court's denial of defendant's motion to suppress to that extent. However, defendant did not have a legitimate expectation of privacy in the truck or its contents sufficient to permit him to contest the reasonableness of the inventory search. Therefore, we affirm the court's denial of defendant's motion to suppress with respect to evidence found in the truck.

FACTUAL AND PROCEDURAL BACKGROUND

On January 20, 2015, Stockton Police Officer Richard Oster and his partner, Officer Melissa White, were riding in a marked patrol car, responding to a missing person report. As they reached their destination and pulled up to the curb and parked, a small white pickup truck also pulled up and parked approximately 50 feet in front of their patrol car. Neither officer had activated the lights or siren as they had not made any effort to pull the truck over. As the officers got out of their patrol car, the driver of the truck also got out and walked back toward them and asked if they were there for him. Officer Oster told the driver he was not there for him, so the driver walked away in the opposite direction. Officer Oster did not notice anyone else in the truck. Officer Oster walked to the nearby house regarding the unrelated missing person report.

About 45 minutes later, Officer Oster returned to the patrol car and was approached by a woman who lived next door to the house he just left. She said that someone was in her backyard and she was afraid this stranger was going to break into her house. The officers investigated and found a man hiding in the backyard. Officer Oster detained the man and took him back to his patrol car. Officer Oster asked the man for his

2

name and what he was doing in the backyard. The man identified himself and explained he was hiding because he thought the officers were there for him because he had a suspended license. At that point, Officer Oster recognized him as the driver of the truck. Officer Oster ran his driver's license information and confirmed his driver's license was suspended and the registration on the truck had expired. Officer Oster told the driver that his truck would be towed. He chose to have the truck towed because the vehicle registration was over six months expired and the driver was operating it with a suspended license.

Officer Oster's partner, Officer White, went to check the vehicle and discovered defendant sitting in the passenger seat. This was the first time Officer Oster realized that there was somebody else in the truck. Officer Oster considered defendant detained at that point although he did not have reason to believe defendant had committed a crime. It was standard procedure to remove occupants during a pretow inventory search for officer safety reasons. When asked why defendant was detained during the vehicle search, Officer Oster replied, "When we do searches of the vehicle, we don't just allow people to wander away in case we found something that would indicate that they committed a crime," adding it was standard out of concern for officer safety.

At the suppression hearing, defendant testified that Officer White "was startled when she saw me" and "[s]he asked me to get out. I got out and she said to sit down on the curb until we figure this out. I go 'what's going on?' She said, 'sit there and we'll figure this out.' "

Officer White stayed with defendant while Officer Oster conducted the inventory search of the truck. Officer Oster located a brown backpack on the passenger side floorboard and inside it was a little black pouch containing a scale and a "white crystal-like substance" that he believed was crystal methamphetamine. Officer Oster arrested defendant due to his proximity to the contraband while sitting in the truck, and then conducted a search of defendant's person incident to arrest. Officer Oster found in

3

defendant's pocket a small scale and a foam note that stated that the author of the note "needed to sell three sacks."[1]

Officer Oster testified that the time between finding defendant inside the truck and his arrest was "approximately three to five minutes." Defendant estimated the time between when Officer White took him to the patrol car and when Officer Oster searched him as "[t]en minutes, maybe."

DISCUSSION

I

*The Court Did Not Abuse Its Discretion In Denying Defendant's*
*Discovery Request Of The Police Personnel Records*

Defendant filed a motion pursuant to *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 for discovery of police personnel records and citizen complaints against Officers Oster and White for dishonesty. The trial court granted the motion regarding Officer Oster, but not Officer White, and determined in an in camera hearing that there were no discoverable materials that needed to be produced to defendant.

"[B]oth *Pitchess* and the statutory scheme codifying *Pitchess* require the intervention of a neutral trial judge, who examines the personnel records in camera, away from the eyes of either party, and orders disclosed to the defendant only those records that are found both relevant and otherwise in compliance with statutory limitation." (*People v. Mooc* (2001) 26 Cal.4th 1216, 1227.) "The statutory scheme carefully balances two directly conflicting interests: the peace officer's just claim to confidentiality, and the criminal defendant's equally compelling interest in all information pertinent to the defense." (*City of San Jose v. Superior Court* (1993) 5 Cal.4th 47, 53.) "A trial court's decision on the discoverability of material in police

---

[1] Officer Oster described the object as a "small rectangular piece of foam, not like paper, but spongy orange foam that had writing on it."

4

personnel files is reviewable under an abuse of discretion standard." (*People v. Jackson* (1996) 13 Cal.4th 1164, 1220.)

Our review of the in camera hearing and police personnel records of Officer Oster show that there were no records or citizen complaints regarding dishonesty, and that the trial court therefore did not abuse its discretion in denying defendant's discovery request.

## II

### *Defendant's Motion To Suppress Evidence*

Defendant contends that the trial court abused its discretion when it denied his motion to suppress evidence because his detention was unlawful and unconstitutionally prolonged, and the inventory search of the truck was invalid.

## A

### *Standard Of Review*

A defendant may move to suppress as evidence any tangible or intangible thing obtained as a result of a search or seizure where the warrantless search or seizure was unreasonable. (Pen. Code, § 1538.5, subd. (a)(1)(A).) " 'A warrantless search is presumed to be unreasonable, and the prosecution bears the burden of demonstrating a legal justification for the search. [Citation.] "The standard of appellate review of a trial court's ruling on a motion to suppress is well established. We defer to the court's factual findings, express or implied, where supported by substantial evidence. In determining whether, on the facts so found, the search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment." ' " (*People v. Suff* (2014) 58 Cal.4th 1013, 1053.) In other words, " 'we view the record in the light most favorable to the trial court's ruling and defer to its findings of historical fact, whether express or implied, if they are supported by substantial evidence. We then decide for ourselves what legal principles are relevant, independently apply them to the historical facts, and determine as a matter of law whether there has been an unreasonable search and/or seizure.' " (*People v. Gemmill* (2008) 162 Cal.App.4th 958, 963.)

5

B

*Defendant's Detention Was Unlawful Because It Was*

*Not Supported By Reasonable Suspicion*

The Fourth Amendment prohibits unreasonable detentions of persons by law enforcement officers. (*Terry v. Ohio* (1968) 392 U.S. 1, 19 [20 L.Ed.2d 889, 904]; see also *People v. Celis* (2004) 33 Cal.4th 667, 673.) Our state Constitution has a similar provision. (Cal. Const., art. 1, § 13.) Generally, a person is detained when the words and actions of a police officer, whether by means of physical force or show of authority, " ' "restrains the liberty of a person to walk away" ' " and would make a reasonable person believe that " ' "he was not at liberty to ignore the police presence and go about his business." ' " (*People v. Rios* (2011) 193 Cal.App.4th 584, 592.)

A detention is reasonable under the Fourth Amendment "when the detaining officer can point to specific articulable facts that, considered in the light of the totality of the circumstances, provide some objective manifestation that the person detained may be involved in criminal activity." (*People v. Souza* (1994) 9 Cal.4th 224, 231.) The specific and articulable facts must cause a reasonable police officer, in a like position, drawing on his or her training and experience, to believe activity relating to a crime has taken place, is occurring or is about to occur, and the person he or she intends to detain is involved in that activity. (*In re Tony C.* (1978) 21 Cal.3d 888, 893.) "The corollary to this rule, of course, is that an investigative stop or detention predicated on mere curiosity, rumor, or hunch is unlawful, even though the officer may be acting in complete good faith." (*Ibid.*)

Here, defendant contends he was detained and the People concede this point. The issue in controversy is whether Officer White's conduct was objectively reasonable under the circumstances and supported by specific articulable facts that "provide some objective manifestation that the person detained may be involved in criminal activity." (*People v. Souza*, *supra*, 9 Cal.4th at p. 231.) Defendant argues that he was detained

6

without reasonable suspicion that he may have been engaged in criminal activity. We agree.

The People point to six factors the trial court relied on in denying defendant's motion to suppress: "(1) that the driver . . . exhibited a consciousness of guilt when first contacting the officers; (2) [the driver] had an expired driver's license and expired registration, thus providing a legal basis to tow the truck and to conduct an inventory search; (3) that [defendant] had to be removed from the truck so officers could conduct the inventory search; (4) Officer White was startled to find [defendant] in the vehicle and the officers needed time to figure out what was going on; (5) the inventory search led to the discovery of the contraband; (6) the discovery of the contraband established probable cause to arrest [defendant], and the search of [defendant's] person was incident to arrest." The People contend that the trial court "believed the brief detention was objectively reasonable under the totality of the circumstances." The People point to the trial court's characterization of the detention as "essentially a law enforcement timeout" while they tried to "figure out if there's something else nefarious going on here." We are not persuaded.

These six factors raise an objectively reasonable suspicion in the *driver*, but not defendant. The People fail to identify specific articulable facts that support the reasonable suspicion that *defendant* may be engaged in any criminal activity. Officer White found defendant sitting in a parked truck -- not a per se suspicious activity. Everything else cited by the trial court as giving rise to reasonable suspicion relates to the conduct of the driver. However, reasonable suspicion in the driver cannot be imputed to defendant unless there are facts that link the driver's suspicious conduct to defendant. Here, the People did not present facts linking defendant's innocuous conduct -- sitting in the truck -- with the driver's suspicious conduct.

The People attempt to overcome its lack of specific articulable facts by emphasizing the need to take into account the totality of the circumstances. The People

7

cite cases that support the idea that reasonable suspicion can be based on a series of innocent activities. (See *United States v. Arvizu* (2002) 534 U.S. 266, 274 [151 L.Ed.2d 740, 750] ["Although each of the series of acts [in *Terry*] was 'perhaps innocent in itself' we held that, taken together, they 'warranted further investigation' "]; *United States v. Sokolow* (1989) 490 U.S. 1, 9 [104 L.Ed.2d 1, 11] [holding that although each of defendant's actions by itself might have been innocent, the totality of all the circumstances together with all of defendant's actions were sufficient for DEA agents to have a reasonable suspicion that defendant was committing a drug crime].)

This case is clearly distinguishable on its facts. For example, in *Sokolow*, the innocent acts that the court cited to support reasonable suspicion were, "(1) [defendant] paid $2,100 for two airplane tickets from a roll of $20 bills; (2) he traveled under a name that did not match the name under which his telephone number was listed; (3) his original destination was Miami, a source city for illicit drugs; (4) he stayed in Miami for only 48 hours, even though a round-trip flight from Honolulu to Miami takes 20 hours; (5) he appeared nervous during his trip; and (6) he checked none of his a luggage." (*United States v. Sokolow*, *supra*, 490 U.S. at p. 3 [104 L.Ed.2d at pp. 7-8].) The court reasoned that "any one of these factors is not by itself proof of any illegal conduct and is quite consistent with innocent travel. But we think taken together they amount to reasonable suspicion." (*Id.* at p. 9 [104 L.Ed.2d at p. 11].)

Another example is found in our Supreme Court's reasoning in *Souza*, where the officer, on patrol in "total darkness" at 3:00 a.m. in a high-crime area "known for burglary and drug activities," discovered two people talking to the occupants of a car and, when he directed his spotlight on the group, the car's occupants bent down while the defendant immediately fled. (*People v. Souza*, *supra*, 9 Cal.4th at pp. 242, 228.) The court found that these facts "justified a brief, investigative detention to enable the officer to resolve the ambiguity in the situation and to find out whether the activity was in fact legal or illegal." (*Id.* at p. 242.)

Here, the People failed to cite a series of "innocent acts" *attributable to defendant* that, taken together, constitute a basis for a finding of reasonable suspicion that *defendant* may be engaged in wrongdoing. The only fact concerning defendant's conduct was that he was found sitting in a parked vehicle for an unknown amount of time. The trial court incorrectly relied on the driver's suspicious conduct as a basis for finding reasonable suspicion in defendant.

In its ruling, the court acknowledged that defendant was not seen in the truck prior to Officer White's start of the inventory search, yet it stated that "there's circumstantial evidence that he was in the [truck] for that [45 minute] time period." The court reasoned, "It just fits with the facts that the co-defendant essentially abandoned -- it appears abandoned [defendant] and went. And when all of a sudden they see [defendant] there, the officers have got to figure out what's going on. They know that one occupant of the vehicle went and hid in the backyard of someone [who] he didn't know for a 45-minute period, and then all of a sudden there's this other person who at least the officers appeared to have [thought] stayed in that vehicle. That's odd." The court characterized defendant's detention as a "law enforcement timeout" so the officers could figure out if something else nefarious was going on. Defendant's "odd" behavior -- sitting in a parked truck for potentially 45 minutes -- is not by itself sufficient articulable facts that would lead a reasonable officer, based on his training and experience, to possess a reasonable suspicion that defendant may be engaged in criminal activity.

Alternatively, the People argue that even if defendant was unlawfully detained, the fruit of the poisonous tree doctrine does not apply because the search of defendant occurred *after* the officers discovered drugs in the truck. The People claim the warrantless search fell under the "search incident to arrest" exception. (See *Weeks v. United States* (1914) 232 U.S. 383, 392 [58 L.Ed. 652, 655]; see also *Arizona v. Gant* (2009) 556 U.S. 332, 338 [173 L.Ed.2d 485, 493].) However, absent the unlawful detention, defendant might have left the area when ordered out of the truck, and the

9

officers would not have been able to search him, unless they could have tracked him down through further investigation. Because he was detained, he was accessible to search. Because the detention was unlawful, the search of defendant's person was the fruit of that poisonous tree. Consequently, the trial court erred in denying defendant's motion to suppress with respect to the evidence found on his person.

Because we find defendant's detention to be unlawful due to the absence of reasonable suspicion, we need not address defendant's contention that his detention was unconstitutionally prolonged.

C

*Defendant Cannot Contest The Inventory Search Of The Truck Because He Failed To Assert A Legitimate Expectation Of Privacy In The Truck Or Its Contents*

Defendant contends that the People failed to meet their burden regarding a reasonable inventory search of the truck because they failed to establish "that the impound was necessary as part of the officers' community caretaking function, and that the officers were acting in conformance with departmental policy." The People respond that defendant "lacks standing to contest the inventory search of the vehicle" because he had no ownership interest in the truck, and in the alternative, "assuming standing, the suspension of the [driver's] license coupled with the vehicle's expired registration of the vehicle justified the towing and inventory search of the vehicle." We agree with the People that defendant lacks standing to contest the vehicle search.

"Fourth Amendment rights are personal rights which, like other constitutional rights, may not be vicariously asserted." (*Alderman v. United States* (1969) 394 U.S. 165, 174 [22 L.Ed.2d 176, 187].) "The established principle is that suppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence. Coconspirators and codefendants have been accorded no special standing." (*Id.* at pp. 171-172 [22 L.Ed.2d at pp. 185-186].)

10

The capacity to claim the protection of the Fourth Amendment does not depend upon a property right in the invaded space but upon whether the person who claims the protection has a legitimate expectation of privacy. (*Katz v. United States* (1967) 389 U.S. 347, 353 [19 L.Ed.2d 576, 583].) The burden is on the proponent of the motion to suppress to establish that his own Fourth Amendment rights were violated by the challenged search or seizure. (*People v. Cowan* (1994) 31 Cal.App.4th 795, 798.) The moving party, by his conduct, must have " 'exhibited an actual (subjective) expectation of privacy,' . . . [and the] subjective expectation of privacy is 'one that society is prepared to recognize as "reasonable." ' " (*Smith v. Maryland* (1979) 442 U.S. 735, 740 [61 L.Ed.2d 220, 226-227], citing *Katz v. United States*, *supra*, 389 U.S. at p. 361 [19 L.Ed.2d at pp. 587-588] (conc. opn. of Harlan, J.).)

In *Rakas v. Illinois* (1978) 439 U.S. 128 [58 L.Ed.2d 387], police stopped and searched a vehicle driven by robbery suspects, and found a rifle under the seat and shells in the glove compartment. The Supreme Court held that the passengers had no legitimate expectation of privacy in the vehicle because "they asserted neither a property nor a possessory interest in the automobile, nor an interest in the property seized." (*Id.* at p. 148 [58 L.Ed.2d at p. 433].)

Here, defendant lacked standing to challenge the search of the truck because he did not assert any valid ownership or possessory interest in the truck or assert a legitimate expectation of privacy in the contents of the vehicle in general, or the brown backpack in particular. Therefore, defendant cannot contest the validity of the inventory search of the truck because his Fourth Amendment rights were not implicated by the search. Consequently, the trial court did not err is denying defendant's motion to suppress with respect to the evidence discovered in the search of the truck.

## DISPOSITION

We affirm the denial of defendant's *Pitchess* discovery request for police personnel records. The order denying defendant's motion to suppress evidence is

reversed in part and affirmed in part. The evidence found on defendant's person must be suppressed. However, the evidence found during the search of the truck was admissible. The trial court is directed to allow defendant to withdraw his no contest plea, and if he does, to conduct possible further proceedings consistent with our holding in this case.

                                                     /s/
                                                     Robie, J.

We concur:

/s/
Nicholson, Acting P. J.

/s/
Hoch, J.

12