Filed 7/8/16  P. v. Cruz CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | F069345 |
| Plaintiff and Respondent, | (Super. Ct. No. BF148641A) |
| v. | **OPINION** |
| JOSE MOJARRO CRUZ, | |
| Defendant and Appellant. | |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Kern County.  Charles R. Brehmer, Judge.

Cambell Whitten and Jesse Whitten for Defendant and Appellant.

Kamala D. Harris, Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and Galen N. Farris, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Levy, Acting P.J., Detjen, J. and Franson, J.

1.

## INTRODUCTION

Appellant Jose Mojarro Cruz pled no contest to possession of methamphetamine for sale and was sentenced to three years in local custody, followed by 10 years of mandatory supervision. On appeal, Cruz argues the trial court erred by denying his motion to suppress the evidence against him, as it was procured during an unlawful protective sweep. We affirm.

## STATEMENT OF THE CASE

On October 7, 2013, an information was filed in Kern County charging defendant Jose Cruz with one count of possession of cocaine for sale (Health and Saf. Code,[1] § 11351; count 1), one count of possession of heroin for sale (§ 11351; count 2), one count of marijuana for sale (§ 11359; count 3), and one count of possession of methamphetamine for sale (§ 11378; count 4). With respect to counts 1, 2, and 4, the information alleged Cruz had suffered three prior convictions within meaning of section 11370.2, subdivisions (a) and (c). The information also alleged Cruz had served two prior prison terms within the meaning of Penal Code section 667.5, subdivision (b).

Prior to his preliminary hearing, Cruz filed a motion to suppress the evidence against him, which was denied. After being held to answer, Cruz filed a motion to dismiss the information on the grounds the trial court erroneously denied his motion to suppress. The trial court denied that motion as well and, on January 15, 2014, Cruz pled no contest to possession of methamphetamine for sale, admitted having three prior convictions within meaning of section 11370.2, subdivision (c), and to serving one prior prison term within meaning of Penal Code section 667.5, subdivision (b). In accordance with the plea, the trial court sentenced Cruz to a stipulated term of three years in local custody, followed by 10 years of mandatory supervision.

---

[1]    Unless otherwise specified, all subsequent statutory references are to the Health and Safety Code.

**STATEMENT OF FACTS**[2]

On May 2, 2013, Cruz was on probation and under surveillance by Rodolfo Rivera and other officers with the Kern County Probation Department assigned to the gang intervention and suppression team.  Officer Rivera knew that Cruz was on searchable felony probation for narcotics sales and had previous contact with Cruz one year before, in which he found $20,000 cash in Cruz's house while he was on probation.  Rivera also knew that Cruz was a member of the Colonia Bakers criminal street gang.

At approximately 9:30 p.m., Officer Rivera was notified by other probation officers that a white Chevy Malibu had driven into the driveway of a residence at 2643 Potomac Street in Bakersfield.  Rivera had seen Cruz driving that car earlier in the day, and it was reportedly seen outside the same residence with Cruz and an unidentified Hispanic woman at 6:30 p.m.  When Rivera arrived around 9:30 p.m., the Malibu was parked in the driveway, with Alicia Rangel in the driver's seat. It was extremely dark. Using a flashlight, Rivera saw Cruz standing in the backyard of the residence.  Officer Rivera made contact with Cruz, searched him, and found about $3,900 in cash on his person.

After making contact with Cruz, Officer Rivera noticed that the front door of the residence was slightly ajar, and he could see into the house and saw lights on.  Rivera was also aware that the Potomac house was within the traditional boundaries of the Colonia Bakers.  Based on the facts that Cruz was a gang member, the Potomac house was within his gang's territory, it was late at night, and lights were on in the house, Officer Rivera and the supervising officer at the scene decided to conduct a protective sweep of the house for purposes of officer safety.  Officer Rivera testified that this protective sweep was a cursory search of the house conducted for the sole purpose of

---

[2]     All facts are taken from the motion to suppress hearing and the preliminary hearing which were held on the same day before the same court.

making sure no one else was present in the house who could "surprise officers." No one was found in the house.

Despite not locating anyone in the home, items found in plain view during the protective sweep caught Officer Rivera's attention. Inside one of the bedroom closets, Rivera found a piece of mail addressed to Cruz but at a different address; it was addressed to Cruz's reported probation address at 1024 Exchange. In that same closet, a dry cleaning receipt bearing Cruz's name was found attached to garments hanging in the closet. No exploratory manipulation was used when examining the receipt or the mail. Another officer also found suspected heroin, methamphetamine, and cocaine on top of the kitchen microwave during the course of the protective sweep. The suspected drugs were seized as contraband. When asked by Officer Rivera, Cruz denied living at the Potomac house and said that he had not been there in days and he did not know why his mail was found in the house. However, Cruz was able to tell Officer Rivera where the air conditioning switch was.

Officer Rivera testified that he had no doubt after the protective sweep that Cruz was associated with the Potomac house. This perceived association with the house and Cruz's probation status led Officer Rivera and his partners to conclude that a more thorough probation search of the house was legally justified. During this subsequent probation search, additional suspected drugs and more than $100,000 in cash were found. A rental agreement to the house with Cruz's sister's, Flor Cruz, name on it was also found underneath the kitchen sink. The lease covered the time period of the search. Keys to the Potomac house were attached to the keys to the Malibu parked in the driveway. Although it was never established who those keys belonged to, the trial court found Cruz "at least circumstantially" had authority over keys to the house.

Prior to trial, Cruz filed a motion to suppress the evidence against him on the grounds it was procured during an unlawful search. The district attorney argued in

4.

opposition that Cruz could not prove that he had standing to challenge the search of the Potomac house.

The trial court denied the motion, finding that Cruz had standing to challenge the search and the initial search was a lawful protective sweep for officer safety. The court also held that a further search of the house after the protective sweep was justified because of Cruz's probationary status and because the court found sufficient evidence that Cruz was occupying the house on more than transitory basis.

The preliminary hearing continued after the trial court denied the motion to suppress. Further evidence of what was seized in the searches was introduced, including an iPhone found on top of a bed in one of the bedrooms. Pictures on the iPhone included self-portraits by Cruz and three children. Photos of the three children also showed them at a dining room table located in the Potomac house. The table was covered with a large amounts of U.S. currency.

Defendant was held to answer. Following the trial court's rulings, Cruz entered a negotiated plea of no contest, and this appeal followed.

## DISCUSSION

On appeal, appellant contends the trial court erred in denying his motion to suppress because the protective sweep of the house was not legally justified. Respondent argues appellant may not raise the issue of the search since he failed to demonstrate he had an expectation of privacy in the Potomac house.

I. CRUZ MET HIS BURDEN OF PROVING THAT HE HAD A REASONABLE EXPECTATION OF PRIVACY IN THE POTOMAC HOUSE RESIDENCE

A. Standard of Review

When reviewing a trial court's ruling on a Penal Code section 1538.5 motion to suppress evidence, we review the trial court's determination of the historical facts under the "deferential substantial evidence standard" and independently review the application of law to the facts. (*People v. Brendlin* (2008) 45 Cal.4th 262, 268.)

B. Applicable Law

"'Fourth Amendment rights are personal rights which ... may not be vicariously asserted.'" (*Rakas v. Illinois* (1978) 439 U.S. 128, 133-134.) "The established principle is that suppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence." (*Alderman v. United States* (1969) 394 U.S. 165, 171-172.) The defendant bears the burden of showing a legitimate expectation of privacy. (*Rawlings v. Kentucky* (1980) 448 U.S. 98, 104.) A defendant challenging that his or her rights were violated by an unlawful search must first establish he or she had a "'legitimate expectation of privacy in the invaded place'" or the seized thing. (*United States v. Salvucci* (1980) 448 U.S. 83, 91-92.)

"The legitimacy of the expectation of privacy is determined under the totality of the circumstances." (*People v. Tolliver* (2008) 160 Cal.App.4th 1231, 1239.) "Whether the defendant had a legitimate expectation of privacy is subject to a two-part test: (1) did the defendant manifest a subjective expectation of privacy in the object of the search? and (2) is society willing to recognize the expectation of privacy as legitimate?" (*Ibid.,* citing *California v. Ciraolo* (1986) 476 U.S. 207, 211.) "'In other words, the defendant must show that he or she had a subjective expectation of privacy that was objectively reasonable.'" (*People v. Ayala* (2000) 23 Cal.4th 225, 255.) An expectation of privacy is reasonable if it "has 'a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society.'" (*Minnesota v. Carter* (1998) 525 U.S. 83, 88 (*Carter*).)

While "an overnight guest in a home may claim the protection of the Fourth Amendment, ... one who is merely present with the consent of the householder may not." (*Carter, supra,* 525 U.S. at p. 90.) In other words, "[b]eing legitimately on the premises, without more, is insufficient" to establish a reasonable expectation of privacy. (*People v. Rios* (2011) 193 Cal.App.4th 584, 591.) Only in "'extraordinary situations'" will

someone who is not an overnight guest have a legitimate expectation of privacy in a residence. (*People v. Cowan* (1994) 31 Cal.App.4th 795, 799 (*Cowan*).)

To determine whether an extraordinary situation is present, courts will examine whether the defendant "had authority to be in the [residence] alone, to enter without permission, to store anything there, to invite anyone (with or without the host's approval), or to visit without advance [notice,]" and whether the defendant "had ever stayed at the [residence] for an extended time." (*Cowan, supra,* 31 Cal.App.4th at p. 800, fn. omitted.) Additionally, the court in *People v. Roybal* (1998) 19 Cal.4th 481, 507 (*Roybal*), held that courts may consider whether the defendant has a property or possessory interest in the place searched or the items seized, has a right to exclude others from the place, and was legitimately on the premises.

This court in *People v. Allen* (1993) 17 Cal.App.4th 1214, 1222 (*Allen*), relying on *United States v. Hawkins* (11th Cir. 1982) 681 F.2d 1343, 1346, held that a court may not base its determination of a lack of standing exclusively on the defendant's disclaimer of ownership, since it is legally possible to not own a residence, yet still retain a reasonable expectation of privacy in it.

C. <u>Analysis</u>

Upon review of the evidence submitted to the trial court, we conclude the evidence was sufficient to support a finding that Cruz had a reasonable expectation of privacy in the Potomac house and occupied the house on more than a transitory basis. As discussed below, sufficient evidence was presented at the preliminary hearing to satisfy multiple factors from *Cowan, supra,* 31 Cal.App.4th at page 800, and *Roybal, supra,* 19 Cal.4th at page 507, establishing Cruz's reasonable expectation of privacy in the Potomac house.

Cruz offered sufficient evidence to support a finding that he had authority to both be in the residence alone and enter without permission. The fact that Cruz had a key to the house is probative of both of these factors. Even if Cruz is not the owner or lessee of the house, the fact that the owner or lessee gave him a key to the house implies that he

7.

had such authority. Furthermore, the fact that Officer Rivera found Cruz alone in the backyard with the door open, the lights on, and no one else inside is evidence of Cruz's authority to be in the residence alone and enter without permission.[3]

Moreover, there is clear evidence that Cruz had the authority to store items in the house. The dry-cleaning receipt and garments in the closet along with mail correspondence addressed to him, albeit to a different address, is probative of this authority because people traditionally do not store clothing in a residence unless they are occupying it on more than a transitory basis. The particular location of the dry-cleaning and mail is also telling because these items were found in a bedroom closet and transitory guests usually do not store items in a bedroom closet.

There was also ample evidence that Cruz had been at the house on prior occasions. The most basic evidence of this is that Cruz knew the location of the air conditioning switch. Additionally, the photographs on the iPhone place Cruz in the house on a prior occasion, and show that Cruz had knowledge of the large sums of cash. That the iPhone was found on the bed in the same bedroom as the dry-cleaning and mail provides further evidence of Cruz's association with the northeast bedroom of the house. Finally, Officer Rivera testified that he had received information from a different officer that Cruz had been observed at 6:30 p.m. that same day at the Potomac house with an unidentified female passenger in the white Chevrolet Malibu; Officer Rivera received this information prior to confronting Cruz in the backyard.

The fact that the lease agreement found under the sink listed Cruz's sister, Flor, as the lessee supports an inference that Cruz had permission to enter his sister's home. No evidence was presented that Cruz broke into the house, nor was there reason to believe Cruz was not welcome there.

---

[3]     There is also no evidence or allegation that Cruz broke into the house or that he made an unauthorized copy of the house key.

Finally, Officer Rivera's own testimony at the motion to suppress hearing is perhaps most probative of Cruz's reasonable expectation of privacy in the Potomac house. Officer Rivera testified that, after conducting the protective sweep of the residence, he had no doubt that Cruz was associated with the house.

Although Cruz told Officer Rivera that he did not live at the house at 2643 Potomac, appellant's statement is not enough to hold that Cruz did not have a reasonable expectation of privacy. (*Allen*, *supra,* 17 Cal.App.4th at p. 1222.) While Cruz did not offer conclusive evidence that he was consistently spending the night at the house, he presented sufficient evidence of a reasonable expectation of privacy in the house based on his access and control over the house.

While most of these facts, taken individually, would be insufficient to support a finding that Cruz had a reasonable expectation of privacy in the Potomac house residence, we are of the opinion that they do support such a finding when examined together under the totality of the circumstances. Using our independent judgment, we are satisfied that Cruz has met his burden.

## II. THE PROTECTIVE SWEEP WAS LEGALLY JUSTIFIED

Cruz argues that the protective sweep was impermissible because (1) it was pursuant to a detention and not an arrest, and (2) the officers had no reasonable suspicion supported by articulable facts that anybody threatening was inside the house. Additionally, Cruz contends that there was an unreasonably prolonged detention. Initially, we find that the detention was not unreasonably prolonged. We further conclude Cruz's contentions regarding the protective sweep rest on a misunderstanding of applicable law.

### A. Standard of Review

When reviewing a trial court's ruling on a Penal Code section 1538.5 motion to suppress evidence, we review the trial court's determination of the historical facts under

9.

the "deferential substantial evidence standard" and independently review the application of law to the facts. (*People v. Brendlin, supra,* 45 Cal.4th at p. 268.)

B. Cruz's detention was not unreasonably prolonged

Cruz does not challenge the initial stop and frisk conducted by Officer Rivera. Rather, Cruz contends that once Officer Rivera found the approximately $3,900 in cash on his person, there was no longer any reason to further detain him. Specifically, Cruz argues that, without more, the $3,900 found on his person cannot support anything more than a hunch that he is engaged in criminal activity. However, Cruz fails to recognize that additional evidence of criminal activity was presented. Cruz was a member of a criminal street gang which sold narcotics. He was also on felony probation for narcotics sales, and Officer Rivera had found a large sum of money on Cruz's person on at least one prior occasion. As Officer Rivera testified, it is his experience that gang members and drug dealers will carry large sums of cash for illegal purposes. Under the totality of the circumstances, these facts were certainly enough to support a reasonable suspicion that Cruz was engaged in criminal activity, and therefore Officer Rivera was permitted to detain him for a reasonable amount of time to ask questions and conduct a protective sweep, which the trial court described as "a brief sweep" to "ensure safety."

C. The legality of the protective sweep[4]

"Warrantless searches of residences are 'presumptively unreasonable' under the Fourth Amendment to the United States Constitution. [Citation.]" (*People v. Werner* (2012) 207 Cal.App.4th 1195, 1198 (*Werner*).) However, there are several exceptions to the warrant requirement. "One such exception is the protective sweep." (*Id.* at p. 1205.) "A 'protective sweep' is a quick and limited search of premises, ... conducted to protect the safety of police officers or others. It is narrowly confined to a cursory visual inspection of those places in which a person might be hiding." (*Maryland v. Buie* (1990)

---

[4] As confirmed during oral argument, Cruz does not challenge the seizures which occurred after the protective sweep was completed, based on his probationary status.

494 U.S. 325, 327 (*Buie*).) A law enforcement officer may conduct a protective sweep of premises "if the ... officer 'possesse[s] a reasonable belief based on "specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant[]" the officer in believing'" that the area to be swept harbors an individual who poses a danger to the officers or others. (*Ibid*.)

### 1. *Protective sweeps can be conducted in conjunction with a detention*

Cruz argues that the protective sweep was impermissible because it was conducted in conjunction with a detention outside of the house, and not incident to a lawful arrest. In making this argument, Cruz relies on *Buie,* where a protective sweep was conducted in conjunction with an arrest. (*Buie, supra,* 494 U.S. 325.) However, since *Buie*, ample cases lead us to hold that protective sweeps are just as proper during detentions outside of a house, as they are during arrests outside a house. The court in *Werner* specifically held that protective sweeps are "not limited to situations immediately following an arrest," but "may occur in [connection] with a suspect's detention," citing our Supreme Court in *People v. Celis* (2004) 33 Cal.4th 667, 678. (*Werner, supra,* 207 Cal.App.4th at p. 1206.) *Werner* involved a detention inside a house, while *Celis* involved a detention outside a house. While both courts ultimately held the protective sweeps were unlawful, they did so by concluding that the evidence lacked articulable facts supporting a reasonable suspicion that the area to be swept harbored an individual who poses a danger to the officers or others. (*Werner, supra*, 207 Cal.App.4th at p. 1209; *Celis*, *supra,* 33 Cal.4th at p. 679.) Both cases assumed that a valid protective sweep could follow a valid detention.

It would be unreasonable to hold that protective sweeps incident to *arrests* outside the house are permissible, but sweeps incident to *detentions* outside the house are not. This is because the potential threat to an officer detaining a person outside of a house is exactly the same as the threat to an officer arresting someone outside of the same house. Although neither the Supreme Court of the United States nor any California court has

11.

specifically upheld a protective sweep in conjunction with a detention outside of a house, there is at least one case from another court which so holds. In *United States v. Meza-Corrales* (9th Cir. 1999) 183 F.3d 1116, the Ninth Circuit upheld a protective sweep of a residence conducted while the suspect was detained, but not arrested, outside of the residence.

In sum, we conclude Cruz's distinction between protective sweeps incident to arrests and sweeps incident to detentions is logically unsound and frustrates the policy behind the protective sweep exception to the warrant requirement.

### 2. *There were articulable facts to support a reasonable suspicion*

Law enforcement officers may conduct a protective sweep of a home if officers are aware of facts that reasonably indicate that there is another person on the premises that poses a threat to the officers. (*Buie, supra,* 494 U.S. at p. 334.) Cruz argues that "[t]here was essentially no evidence that anyone was inside the house, much less that anyone who was a *threat* was inside." We disagree.

As to the first requirement from *Buie*, there were articulable facts that gave Officer Rivera reason to suspect that someone else was in the house. First, there were lights on in multiple rooms, and this was, by itself, enough reason to suspect that someone else may have been in the house. It is important to stress that the officers did not need conclusive proof that someone else was on the premises; a reasonable suspicion is all that is required.

Cruz is correct in asserting that a reasonable suspicion that someone else is on the premises is not enough to warrant a protective sweep; there must additionally be a reasonable suspicion that this person poses a threat to officer safety, as stated in the second requirement of the *Buie* rule. In the present case, there were ample articulable facts that gave the officers reason to suspect that a person in the house would have been a threat to them. The detention occurred at night in a gang-controlled neighborhood, and the person detained was not only a convicted felon on probation, but also a member of a

criminal street gang whose members are known to carry weapons for offensive and defensive purposes. Additionally, the safety concern of the front door being ajar cannot be minimized. A surprise attack on the officers could be carried out much more quickly and effectively by someone inside the house if the front door were at least slightly open. Again, the officers did not need to have conclusive proof that the other potential occupants of the house would have been a threat to the officers; a reasonable suspicion would have done. The reasonable possibility of there being gang members in the house, at night, within their gang's territory, and potentially armed is more than ample reason for the officers to be suspicious of a threat. Officer Rivera and his partners had reason to be concerned for their safety and therefore a quick, cursory sweep of the premises was permissible.

## DISPOSITION

The judgment is affirmed.